UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                              **REPORT, RECOMMENDATION**
                                                                      **AND ORDER**
v.

WILLIAM L. HUNTRESS,                              13-CR-00199-WMS-JJM
ACQUEST DEVELOPMENT, LLC, and
ACQUEST TRANSIT, LLC,

                                        Defendants.
_____

        By Text Order dated September 20, 2013, this case was referred to me by Hon.

William M. Skretny for supervision of all pretrial proceedings.  The five-count Indictment [1][1]

centers on allegedly false responses defendants provided to inquiries from the United States

Environmental Protection Agency ("EPA") and an allegedly willful violation of an Order of this

Court concerning their activities at a 97-acre parcel of property located at 10880 Transit Road,

Amherst, New York ("Site").  Before me are defendants' pretrial motions [16, 18],[2] as well as the

government's cross-motion for reciprocal discovery. Government's Consolidated Response [28],

pp. 62-67.  Oral argument was held on June 5 and 23, 2014 [191], following which the parties

made additional submissions [39, 41, 43].

        For the following reasons, defendants' non-dispositive motions are granted in part

and denied in part, and the government's cross-motion for reciprocal discovery is granted;  and I

_____

        [1]        Bracketed references are to the CM/ECF docket entries.

        [2]        Defendants, through their primary counsel, Lipsitz Green Scime Cambria LLP, filed an
omnibus motion [16], and through separate counsel, Hodgson Russ, LLP, also filed a motion to dismiss
the Indictment for prosecutorial misconduct [18].  At the June 5, 2014 oral argument, defendants
explained that this was necessary because in connection with their motion to dismiss for prosecutorial
misconduct they believe it is possible "that there might be an evidentiary proceeding that would require
[primary counsel] to testify".  Transcript of the June 5, 2014 oral argument [44], pp. 7-8.

further recommend that defendants' motions to dismiss, to suppress evidence, and for a hearing

pursuant to Franks v. Delaware, 438 U.S. 154 (1978) be denied.

## BACKGROUND

### A.    The Current Indictment

The Indictment [1] alleges that on or about June 9, 2005, defendant Acquest

Development, LLC ("Acquest Development") and its principal and sole managing member,

defendant William L. Huntress, entered into a purchase agreement for the Site which included a

provision for a wetlands discount of $10,000 per acre for any wetlands determined to be on the

Site in excess of 13 acres (id., p. 4, ¶11).  A wetlands delineation was allegedly prepared at the

request of Huntress and Acquest Development on or about December 13, 2005, which

determined that 77 acres of the Site were "wetlands subject to Federal jurisdiction" (id., pp. 4-5,

¶¶12-13).  The Site was allegedly purchased by defendant Acquest Transit, LLC ("Acquest

Transit") and  its president and sole managing member,  Huntress, in January 2006 (id., p. 5, ¶14)

It is alleged that defendants never applied "for a permit to discharge dredged or

fill material into potential wetlands on the Site" (id., p. 8, ¶24), yet commencing on or about

June 22, 2005 contractors "acting on behalf of and at the direction of defendants . . . . conducted

mechanized earthmoving and land-clearing activities on the Site" (id., p. 5, ¶15).  In April 2007

the EPA began its investigation into whether violations of the Clean Water Act, 33 U.S.C.

§§1251, et seq. ("CWA"), had been or were taking place at the Site (id., p. 6, ¶17).  During the

course of its investigation, the EPA allegedly sent Acquest Development and Acquest Transit

information request letters "pursuant to their authority under the CWA" seeking any "wetland delineations studies conducted for the Site" (id.).  However, it alleged that defendants "failed to provide or disclose information material to the EPA's investigation of the Site, including the fact that a previous wetland delineation had been conducted" (id., p. 19, ¶45).

It is further alleged that notwithstanding Cease and Desist Orders issued by the EPA on or about February 21, 2008 and September 5, 2008 requiring defendants to cease all earthmoving work using mechanized equipment on the Site, contractors "acting on behalf of and at the direction of defendants" continued these activities until on or about July 14, 2009 (id., pp. 6-7, ¶¶18-21).

On January 15, 2009, the government commenced an action seeking injunctive relief and civil penalties against Acquest Transit for alleged violations of the CWA.  *See* United States v. Acquest Transit, LLC, 09-CV-055.  Judge Skretny issued a Decision and Order on July 15, 2009 granting the government's motion for a preliminary injunction, enjoining Acquest Transit, as well as "'its officers, agents, . . . employees, and others acting in concert with it . . . from placing additional fill or performing any additional earthmoving work at the' Site". Indictment [1], p. 7, ¶22, p. 26, ¶2 (*quoting*  United States v. Acquest Transit LLC, 2009 WL 2157005, *11 (W.D.N.Y. 2009)).  A subsequent Order was issued by Judge Skretny on July 31, 2009, clarifying that Acquest Transit's lessee, John Kelkenberg, was not enjoined from "'harvesting the existing 75-acre crop of winter wheat, provided that such harvesting [was] performed without resulting in any discharge of dredged or fill material'" (id., p. 26, ¶3). Notwithstanding these orders, the Indictment alleges that "[o]n or about May 25, 2010, a farmer, acting . . .  at the direction of defendants . . . performed mechanized earthmoving activities on the

Site" (id., pp. 7-8, ¶23, p. 23, ¶59,  p. 27, ¶4. *See* <u>United States v. Acquest Transit LLC</u>, 2010 WL 6350470 (W.D.N.Y. 2010) (Foschio, M.J.), <u>adopted</u>, 2011 WL 1167754 (W.D.N.Y. 2011) (Skretny, J.).

As a result of this alleged conduct, the Indictment charges defendants with:

- -     obstruction of justice for their knowing concealment of the "wetland delineation study for the Site, with the intent to impede . . . the investigation and proper administration of a determination by the [EPA] as to the applicability of the [CWA]to the Site", in violation of 18 U.S.C. §§1519 and 2 (Indictment [1], Count 2);

- -     concealing the following material facts: "(a) . . . a wetland delineation for the Site had been conducted for and on behalf of the defendants, and (b) . . . non-agricultural activities had occurred on the western portion of the Site including the creation of an approximately 3.2 acre fill pad", in violation of 18 U.S.C. §§1001(a)(1) and 2 (id., Count 3);

- -     making false statements "when responding to a second Request for Information from the [EPA], defendants stated and represented that, 'Presently, the property, less and except the Greenview Nursery parcel (approximately 3.848+ acres), continues to be used solely for agricultural purposes[ ]', whereas, as the defendants then knew . . . , a portion of the Site outside of the Greenview Nursery parcel was being used for other than agricultural purposes", in violation of 18 U.S.C. §§1001(a)(2) and 2 (id., Count 4);

- -     "willfully and knowingly disobey[ing] and resist[ing] [Judge Skrenty's]  Order entered July 15, 2009 . . . by performing, and causing to be performed, earthmoving work at the Site", in violation of 18 U.S.C. §§401(3) and 2 (id., Count 5); and

- -    conspiracy to violate 18 U.S.C. §§1001(a) and 1519, in violation of 18 U.S.C.

§371 (id., Count 1).


**B.    The Initial Criminal Prosecution**

This action is the second criminal prosecution initiated against the defendants

arising from the Site.  Defendants were initially the subject of a seven-count Indictment that

included the charges in the current Indictment, as well as two alleged CWA violations.  *See*

United States v. Acquest, *et al.*, 11-CR-0347(S)(M).  That Indictment was dismissed, without

prejudice, because the grand jury's independence was compromised by the government's

disclosure to the grand jury of Judge Arcara's Order compelling defendants' in-house counsel,

Louis Fessard, to testify before the grand jury, including his finding of probable cause to believe

that crimes had been committed.  *See* United States v. Acquest Development, LLC,  932

F.Supp.2d 453 (W.D.N.Y. 2013) (Skretny, J./McCarthy, M.J.).


**C.    The Additional Civil Litigation**

In addition to the civil actions commenced by the government concerning the Site,

following the institution of the initial criminal prosecution, defendants commenced two actions

against the government:  Huntress, *et al*. v. Mugdan, *et al.*, 12-CV-559,[3] seeking, *inter alia*,

damages for the government's alleged retaliatory prosecution; and Huntress, *et al*. v. United

States Department of Justice, *et al.*, 12-CV-1146, seeking a declaratory judgment that Site is not

---

[3]    Acquest Wehrle, LLC is also a plaintiff in this action.

subject to the CWA, and an injunction requiring the government to cease its criminal prosecution

and civil litigation against defendants for alleged CWA violations.

In the related civil litigation, as they do here, defendants have defended their

conduct by, *inter alia*,  maintaining that the Site is not subject to the CWA.  In support of this

argument, they contend that a 1987 Soil Conservation Service determination that approximately

67.7 acres of the Site constitutes prior converted cropland ("PC Cropland"),[4]  which is excluded

from the definition of "waters of the United States", and is therefore beyond the jurisdiction of

the CWA. *See* Huntress v. United States Department of Justice, 2013 WL 2297076, *10

(W.D.N.Y. 2013), cert. for interlocutory appeal denied,  United States v. Acquest Transit, LLC,

2014 WL 2945968 (W.D.N.Y. 2014) (Skretny, J.).[5]  They also allege a "permit shield" defense

against all enforcement actions brought under the CWA, based upon two CWA Section 402

permits issued by the New York State Department of Environmental Conservation in 2006 and

2007 for storm water discharges associated with a nursery located on the Site.  *See* id. at *8.

These arguments have been  rejected by Judge Skretny in the civil actions.  With

respect to defendants' reliance on the "PC Cropland" exemption, he has held that according to

"both the National Resources Conservation Service's and the EPA's regulations, when land has

been abandoned for a continuous five-year period, as the [Site] arguably was, it loses any prior

exemption from the CWA that it may have once had" Id., *11.  Likewise, he has rejected

---

[4]      PC Cropland are "wetlands converted to farming prior to December 23, 1985".
Huntress, 2013 WL 2297076, *10.

[5]       In Huntress v. United States Department of Justice, Judge Skretny also converted
plaintiffs' motion for declaratory relief into a motion for summary judgment and denied the motion.  He
also consolidated that case (12-CV-1146) with United States v. Acquest Transit, LLC (09-CV-055).

defendants' "permit shield" defense, concluding that they are "not shielded from all CWA enforcement by dint of their two Section 402 permits". Id., *10.

## ANALYSIS

A.     **Defendants' Motions**

1.     **Motions to Dismiss the Indictment**

a.     **"PC Cropland"/ Subject Matter Jurisdiction**

In moving to dismiss the Indictment, defendants initially argue that subject matter jurisdiction is lacking because the Site "was, and is, [PC Cropland], and thus exempt under [the] CWA . . . and not subject to EPA . . . jurisdiction". Omnibus Motion [16], p. 6.  "[A]s the [Site] property is indeed PC Cropland, it does not constitute 'waters of the United States' . . . . Accordingly, the EPA had no authority to take the actions it conducted at bar, and this Court has no subject matter jurisdiction, requiring a dismissal of all counts." Id., p. 32.[6]

Defendants' suggestion that this court lacks subject matter jurisdiction has already been considered and rejected.  *See* Acquest Development, 932 F.Supp.2d at 458-59 ("Defendants argue that this court lacks subject matter jurisdiction because the EPA's actions were illegal, and because their property is exempt from the provisions of the Clean Water Act . . . . I disagree. This court's subject matter jurisdiction depends upon whether federal crimes are alleged, not whether they can be proven. Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. §3231, and there can be no doubt that Article III permits Congress to assign federal

---

[6]     "The CWA generally prohibits 'the discharge of any pollutant'  into 'waters of the United States.'" Huntress, 2013 WL 2297076 at *1 (*quoting* 33 U.S.C. §§1311(a), 1362(7)).

criminal prosecutions to federal courts. That's the beginning and the end of the jurisdictional inquiry").

Likewise, as discussed above, defendants' "PC Cropland" argument has twice been expressly rejected by Judge Skretny. *See* Huntress, 2013 WL 2297076; Acquest Transit, LLC, 2014 WL 2945968. Therefore, I recommend that this motion be denied.


### b.    "Permit Shield"

Defendants next argue that the Indictment should be dismissed "because defendants had already obtained CWA permits for [the Site]; thus the 'permit shield' doctrine applied, precluding the instant prosecution". Omnibus Motion [16], p. 33 (emphasis omitted). This argument has also been expressly rejected by Judge Skretny, who concluded that the permits did not as a matter of law preclude the applicability of the CWA. *See* Huntress, 2013 WL 2297076; Acquest Transit, 2014 WL 2945968. Therefore, I recommend that this motion be denied.[7]

---

[7]    For the first time at oral argument, defendants appeared to argue that because they obtained a CWA 402 permit, the government was required to proceed in a civil action against them. Transcript of the June 23, 2014 oral argument [46], pp. 25-29, 63. However, since this argument was not raised in defendants' motion, I will not consider it. *See* In re Monster Worldwide, Inc. Securities Litigation, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("this argument was raised for the first time at oral argument and so was waived in terms of this motion").

### c.    Crime Fraud Exception

Defendants argue that the Indictment should be dismissed since "the prosecution improperly caused privileged testimony to be presented to the grand jury".  Omnibus Motion [16], ¶69.  Again, relying on their PC Cropland and permit shield defenses, they argue that these issues should have been presented to Judge Arcara when the government moved pursuant to the crime-fraud exception to compel defendants' counsel, Louis Fessard, to testify before the grand jury.  Id., ¶¶69-79.  As the government notes, this too represents an "attempt to revive these already rejected defenses".  Government's Consolidated Response [28], p. 27.  Therefore, I recommend that this motion be denied.

### d.    Facial Insufficiency

Defendants move to dismiss Counts 2 through 5 of the Indictment as being facially deficient. Omnibus Motion [16], pp. 60-81. Alternatively, they seek the grand jury minutes and legal instructions.  Id., pp. 68, 73, 76, 81.[8]  In response, the government argues that these counts satisfy the pleading requirements by setting forth the elements of the charges, and that defendants are "[i]n essence, . . . making a sufficiency of the evidence claim, which is inappropriate at this stage of the proceedings".  Government's Consolidated Response [28], pp. 28-31.

Fed. R. Crim. P. ("Rule") 7(c) requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged".  An indictment is sufficient if it charges a crime with (1) "sufficient precision to inform the defendant

---

[8]    All requests for grand jury materials are addressed collectively in Section 4, *infra*.

of the charges he must meet"; (2) "enough detail that he may plead double jeopardy in a future

prosecution based on the same set of events"; and (3) "contain some amount of factual

particularity to ensure that the prosecution will not fill in elements of its case with facts other

than those considered by the grand jury". <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir.

1999).  However, the Second Circuit has "consistently upheld indictments that do little more than

to track the language of the statute charged and state the time and place (in approximate terms) of

the alleged crime".  <u>Id</u>.

  "In deciding a motion to dismiss an indictment for failure to state a criminal

offense, a court must assume the truth of the allegations in the indictment and determine whether

the indictment is valid on its face." <u>United States v. Larson</u>, 2011 WL 6029985, *1 (W.D.N.Y.

2011) (Skretny, J.).  In evaluating the facial sufficiency of the indictment, the court must not

"look[ ] beyond the face of the indictment and dr[aw] inferences as to the proof that would be

introduced by the government at trial".  <u>United States v. Alfonso</u>,  143 F.3d 772, 776 (2d Cir.

1998). With these principles in mind, I will address each of the counts of the Indictment

individually.

   **i.**   **Count 2**

  Count 2 of the Indictment charges defendants with obstruction of justice in

violation of 18 U.S.C. §1519,[9] which makes it a crime to "knowingly . . . conceal [ ], cover[ ] up,

falsif[y], or make[ ] a false entry in any record, document, or tangible object with the intent to

---

  [9]   Defendants are also charged in Counts 2 through 5 with and with aiding and abetting, in violation of 18 U.S.C. §2.

impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter".

First, defendants argue that "[n]owhere in the four corners of the indictment is it alleged that the defendants were expressly notified that an investigation was either pending or being contemplated by the EPA in relation to their Site".  Omnibus Motion [16], ¶106. However, "[b]y the plain terms of §1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime". United States v. Gray, 642 F.3d 371, 378 (2d Cir. 2011).  See United States v. Cossette, 2013 WL 6157918, *2 n. 3 (D.Conn. 2013) ("knowledge that a federal investigation is pending or imminent is not an element of §1519").

Defendants further argue that Count 2 of the Indictment is "wholly void of the requisite elements of knowing concealment and intent to impede or obstruct". Omnibus Motion [16], ¶107 (emphasis in original).  This argument ignores the plain language of the Indictment [1], which alleges that  defendants "did *knowingly conceal* and cover up a record . . . that is, a wetland delineation study for the Site, with the *intent* to impede . . . the investigation and proper administration of a determination by the . . . [EPA] as to the applicability of the [CWA] to the Site" (id., p. 23, ¶2 (emphasis added)).

Pointing to various communications between themselves and the EPA, defendants next argue that these "clearly evince[ ] intent on the defendants' behalf to comply with the government's requests, followed by an understanding that, through said correspondence, they had adequately satisfied the government's concerns".  Omnibus Motion [16], ¶108.  They also argue that since the communications were sent on behalf of the corporate defendants, rather than by

Huntress, Count 2 should be dismissed against Huntress "based on the lack of agency with the corporate defendants". Id., ¶112.  Further, defendants argue that by acting in good-faith on advice of counsel, they lacked the intent necessary to violate 18 U.S.C. §1519.  Id., ¶110.[10]

Since generally "[t]here is no such thing as a motion for summary judgment in a criminal case", United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001) (Arcara, J.), these challenges, which would require me to consider facts outside of the Indictment, cannot be resolved in a pretrial motion to dismiss.  It is only when the government offers "what can be fairly described as a full proffer of the evidence it intends to present at trial" is the sufficiency of the evidence appropriately addressed on a pretrial motion to dismiss an indictment.  United States v. Perez, 575 F.3d 164, 166-67 (2d Cir. 2009), cert. denied, 559 U.S. 1049 (2010). However, that has not occurred here.  Therefore, I recommend that defendants' motion to dismiss Count 2 of the Indictment be denied.

### ii.     Count 3

Count 3 of the Indictment charges defendants with concealing material facts in violation of 18 U.S.C. §1001(a)(1),[11] which makes it a crime "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [to] knowingly and willfully  falsif[y], conceal[ ], or cover[ ] up by any trick, scheme, or device a material fact".  Defendants first argue that a "knowing and willful nondisclosure by the

---

[10]        Similar arguments are directed at Counts 3 (Omnibus Motion [16], ¶119) and 4 (id., ¶129), which I reject for similar reasons.

[11]        Defendants are also charged in Counts 2 through 5 with and with aiding and abetting, in violation of 18 U.S.C. §2.

corporate defendants is not evidenced by the referenced statements to the EPA with regard to the alleged concealment . . . as the corporate defendants . . . attempted to answer all of the EPA's inquiries". Omnibus Motion [16], ¶¶123, 121. They also argue that "the statements in question . . . do not satisfy the government's materiality requirement under 1001". Id., ¶124. However, like defendants' facial challenges to Count 2, these are premature challenges to the sufficiency of the evidence supporting Count 3, which alleges that defendants "did *knowingly and willfully* falsify . . . , and cause to be falsified . . . by trick, scheme and device, *material facts*" (id., p. 24, ¶2 (emphasis added). Therefore, I recommend that defendants' motion to dismiss Count 3 of the Indictment be denied.


### iii.    Count 4

Count 4 of the Indictment charges defendants with making a false statement in violation of 18 U.S.C. §1001(a)(2), which makes it a crime "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [to] make[ ] any materially false, fictitious, or fraudulent statement or representation". Defendants argue that "the government has failed to adequately allege . . . that the referenced statement . . . was false and . . . was made by the defendants with deliberate and willful 'intent to deceive' the government agency". Omnibus Motion [16], ¶¶128, 127 ("the government's allegations of any alleged false statement is wholly lacking in the indictment"). This argument ignores the plain language of Count 4 of the Indictment [1], which alleges that defendants "did *knowingly and willfully* make, and cause to be made, a *materially false*, fictitious and fraudulent statement and

-13-

representation, in that when responding to a second Request for Information from the [EPA] . . .

defendants stated . . . that, 'Presently, the property, less and except the Greenview Nursery parcel

(approximately 3.848+ acres), continues to be used solely for agricultural purposes[ ]',

whereas, as the defendants then knew and believed, a portion of the Site outside of the

Greenview Nursery parcel was being used for other than agricultural purposes" (id., p. 25,¶ 2

(emphasis added)).

       The Indictment also alleges that defendants constructed "a 1,400 foot long road

into the Site, on and through potential wetlands . . . . in furtherance of engaging in commercial

development of the Site" (id., pp. 9-10, ¶¶5-6).  Defendants argue that "[s]tanding alone, a

temporary gravel access road cannot be unilaterally construed to constitute a non-agricultural

purpose, and therefore cannot be used as a basis to construe the corporate defendants' statements

as false".  Omnibus Motion [16], ¶127.  As the government argues, this argument is premature

since it  "move[s] beyond the face of the charges" to "how their interpretation of the evidence

casts doubt on the veracity of the offenses charged".  Government's Consolidated Response [28],

p. 31.   Therefore, I recommend that defendants' motion to dismiss Count 4 of the Indictment be

denied.

### iv.    Count 5

       Count 5 of the Indictment charges defendants with criminal contempt, in violation

of 18 U.S.C. §401(3), which provides, in relevant part, that "[a] court of the United States shall

have power to punish . . . such contempt of its authority, and none other, as . . . [d]isobedience or

resistance to its lawful writ, process, order, rule, decree, or command".  "In order to sustain its

burden of proving the charge of contempt, the government must establish beyond a reasonable doubt each of the following elements: (1) that the Court issued a preliminary injunction prohibiting the defendant from engaging in certain conduct; (2) that the defendant disobeyed or disregarded the preliminary injunction; and (3) that the defendant acted knowingly and wilfully." United States v. Weslin, 204 F.Supp.2d 547, 554 (W.D.N.Y. 2001) (Arcara, J.), aff'd, 34 Fed.Appx. 815 (2d Cir.) (Summary Order), cert. denied, 537 U.S. 960 (2002).  Count 5 of the Indictment [1] includes the content of Judge Skretny's July 15 and 31, 2009 Orders, and alleges that defendants "did willfully and knowingly disobey and resist said Order entered July 15, 2009, the same being a lawful . . . order . . . of the United States District Court for the Western District of New York, by performing, and causing to be performed, earthmoving work at the Site" (id., pp. 26-27, ¶¶2-4).

       Defendants argue that "[t]he indictment is wholly void of any factual allegations to support the requisite element of intent on behalf of defendant Huntress. . . . The farmer's actions . . . do not evince a 'willful, contumacious, or reckless state of mind' on behalf of the defendant Huntress, as is required to sustain a §401 contempt charge".  Omnibus Motion [16], ¶135 (emphasis added), ¶138 ("Nowhere in the indictment has the government specifically alleged an agent relationship between the defendants and 'the local farmer' or that the farmer was in 'active concert or participation with defendant[s]'") .   This argument ignores the plain language of the Indictment [1], which alleges that "[o]n or about May 25, 2010, a farmer, *acting on behalf of and the direction of defendants* . . . performed mechanized earthmoving activities on the Site" (id., pp. 7-8, ¶23 (emphasis added)).

Defendants further argue that "the charge must be dismissed, as the subject Order fails to meet the requirements of Federal Rules of Civil Procedure 65" by not being clear as to what activities constitute "earthmoving". Omnibus Motion [16], ¶136. While defendants may raise this argument at trial, the Indictment [1] plainly alleges that Judge Skretny's July 15, 2009 Order was a "lawful . . . order" that was "willfully and knowingly disobey[ed]" by defendants (id., p. 27, ¶4). Therefore, I recommend that defendants' motion to dismiss Count 5 of the Indictment be denied.

### e.      Authority to Issue Requests for Information

Defendants seek to dismiss the Indictment by arguing that the EPA lacked authority to issue the requests for information that led to the allegedly false responses that are the subject of this Indictment. Omnibus Motion [16], Point V. Specifically, they contend that "[t]he express language of Section 308 authorizes the EPA Administrator to request information only from the owner or operator of a 'point source'" and that a "plain reading" of "Section 308 does not authorize information requests in the absence of discharge of a pollutant". Id., ¶¶95, 98. Alternatively, they seek production of grand jury materials and legal instructions. Id., pp. 49-50.[12]

CWA §308 provides that "the Administrator shall require the owner or operator of any point source to . . . provide such  . . . information as [the Administrator] may reasonably require". 33 U.S.C. §1318(a)(A)(v). Point sources are defined as "any discernible, confined and

---

[12]      In a footnote to the portion of their motion addressing whether the EPA had the authority to issue the information requests, defendants argue that "[t]he government . . . violated ethical rules in communicating with defendants, who were known to be represented by counsel". Omnibus Motion [16], p. 55, n. 20.  However, they do not seek any specific relief for these alleged violations, other than arguing that it "gives the Court further cause to dismiss the first four counts of the Indictment". Id., p. 56, n. 20.

discrete conveyance . . . from which pollutants are or *may be discharged*".  33 U.S.C. §1362(14)

(emphasis added).  "The definition of a point source is to be broadly interpreted" to "'embrac[e]

the broadest possible definition of any identifiable conveyance from which pollutants might enter

waters of the United States.'"  Dague v. City of Burlington, 935 F.2d 1343, 1354 (2d Cir. 1991),

rev'd in part on other grounds, 505 U.S. 557 (1992) (*quoting* United States v. Earth Sciences,

Inc., 599 F.2d 368, 373 (10th Cir.1979)).[13]  Thus, "[b]ulldozers, loaders, backhoes, or dump

trucks that deposit or spread fill material are point sources".  Acquest Transit LLC, 2009 WL

2157005 at *5.

      The Indictment sufficiently alleges that the EPA had authority to issue its requests

for information.  As noted by the government at oral argument, the Indictment  alleges that

examples of  "point sources" include "bulldozers, backhoes, plowing equipment, and other

earthmoving equipment".  Indictment [1], p. 3,¶6.  *See* Transcript of the June 23, 2014 oral

argument [46], p. 37.  The Indictment further alleges that "[b]etween on or about June 22, 2005,

and on or about July 14, 2009, various contractors . . . conducted mechanized earthmoving and

land-clearing activities on the Site", including "[b]ull-dozing"  (id., pp. 5-6, ¶15(d)), and that

"during the course of the investigation, EPA sent defendants . . . information request letters

*pursuant to their authority under the CWA*, seeking information regarding activities at the Site

and relevant documents relating to the Site" (id., p. 6, ¶17) (emphasis added).

      Pointing to the Indictment's characterization of the Site as having "*potential*

wetlands" (id., p. 8, ¶24 (emphasis added)), defendants also argue that "EPA lacked authority to

---

[13]     "Pollutants" include "rock, sand, [and] cellar dirt . . . discharged into water".  33 U.S.C. §1362(6).  *See* Indictment [1], p. 3, ¶9.

issue the [requests for information] because no discharge of pollutants to waters of the United States had occurred on the [Site]".  Omnibus Motion [16], ¶¶94, 100.  However, as the government notes, the "EPA has the authority to request information from an owner or operator per 33 U.S.C §1318(a) . . . . to establish that the Site . . . is covered as a 'water of the United States'".  Government's Consolidated Response [28], p. 19.  If the EPA was required to establish jurisdiction over a site before requesting information under 33 U.S.C. §1318(a), it would "frustrate[] the purposes of the CWA and the plain language of the statute".  United States v. Hartz, 1999 WL 417388, *3 (N.D. Ill. 1999).  Therefore, I recommend that this motion be denied.


### f.      Multiplicity of Counts

Defendants argue that "[v]arious counts in the indictment must be dismissed as multiplicitous".  Omnibus Motion [16], ¶139. Specifically, they point to Count 2 and subsection (a) of Count 3 (id., ¶142), Count 4 and subsection (b) of Count 3 (id., ¶143), and Count 1 and Counts 2, 3 and 4 (id., ¶144).[14] Alternatively, they seek an order requiring the government to merge the multiplicitous counts or for disclosure of the grand jury minutes and instructions.  Id., pp. 81, 84, "Wherefore" clause.   In response, the government argues that defendants' motion is premature and otherwise meritless.  See Government's Consolidated Response [28], pp. 32-34.

---

[14]      Defendants' reference to the subsections of Count 3 identifies the specific facts allegedly concealed - subsection (a) being the wetland delineation allegedly conducted on behalf of the defendants and subsection (b) being that non-agricultural activities allegedly occurred on the western portion of the Site.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed. This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not". Blockburger v. United States, 284 U.S. 299, 304 (1932). Thus, "the critical double jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, whether the 'offense'-in the legal sense, as defined by Congress-complained of in one count is the same as that charged in another". United States v. Basciano, 599 F.3d 184, 198 (2d Cir. 2010).

Defendants' motion is premature, since "the double jeopardy concerns implicated by multiplicitous counts do not arise unless a defendant is actually convicted of, rather than charged with, multiplicitous counts". United States v. Nguyen, 2014 WL 1512030 (W.D.N.Y.) (Payson, M.J.), adopted, 2014 WL 1795045 (W.D.N.Y. 2014) (Larimer, J.). *See* United States v. Rivera, 2011 WL 1429125, *4 (E.D.N.Y. 2011) ("Since it is possible that the jury will convict defendants on only one (1) of the respective counts that they allege are multiplicitous, and acquit defendants on all of the counts with which they allege that count is multiplicitous, the issue of whether the counts are multiplicitous in violation of the Double Jeopardy Clause is premature at the pretrial stage").

-19-

As explained by the Second Circuit, "[e]ven where the Double Jeopardy Clause would bar cumulative punishment for more than one such offense, the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution. . . . Accordingly, if, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment. If the jury convicts on more than one multiplicitous count, the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts." United States v. Josephberg, 459 F.3d 350, 355 (2d Cir. 2006). In any event, the Indictment is not multiplicious on its face.

### i.       Counts 2 and 3(a)

Defendants argue that "[c]oncealing the wetland delineation is plainly the crux of Count 2, as well as subsection (a) of count three.  Indeed, the statutes . . . seek to prevent the same mens rea and criminal conduct - - concealment and cover up".  Omnibus Motion [16], ¶142.  However, as argued by the government, the offense of obstruction of justice, in violation of 18 U.S.C. §1519, requires proof that the defendants acted with the "intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States", an element not present in 18 U.S.C. §1001. Government's Consolidated Response [28], p. 33.

### ii.      Counts 4 and 3(b)

Defendants argue that "concealing the purportedly agricultural use of the property is the focus" of both counts and that 18 U.S.C. §§1001(a)(1) and 1001(a)(2) "have the same mission in mind".  Omnibus Motion [16], ¶143.  This argument is unavailing.  "By its very terms, §1001(a)(1) requires that an individual falsify, conceal or cover up by any trick, scheme, or device a material fact. Section 1001(a)(2) . . . incorporate[s]  no such element. Correspondingly, §1001(a)(2) requires that the accused make a 'materially false, fictitious, or fraudulent statement of representation' . . . , whereas §1001(a)(1) contains no such requirement." United States v. Dose,  2005 WL 1806414, *11  (N.D. Iowa 2005).

### iii.      Counts 1 and 2-4

Since "[a] conspiracy is not the same crime as the underlying violation that it contemplates" United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir.), cert. denied, 543 U.S. 949 (2004), Count 1 of the Indictment is not multiplicitous to the remaining counts of the Indictment. See Ermichine v. United States,  2011 WL 1842951, *9  (S.D.N.Y. 2011), adopted, 06-cv-10208, September 20, 2011 Order [20] ("a conspiracy charge is not multiplicitous of the underlying substantive offense alleged in the indictment"). Indeed, defendants concede that "the conspiracy itself is the crime no matter how 'diverse the objects'" (Omnibus Motion [16], ¶144 (quoting United States v. Murray, 618 F.2d 892 (2d Cir. 1980)).[15]   Therefore, I conclude that there is no basis to dismiss these counts, and recommend that defendants' motion be denied.

---

[15]      The portion of Murray defendants rely upon addresses duplicity, rather than multiplicity. See 618 F.2d at 896.

### g.       Duplicity of Counts

Defendants seek dismissal of Counts 1 and 3 as being duplicitous.  Omnibus

Motion [16], ¶147.  Alternatively, they seek production of the grand jury transcript and

instructions.  Id., ¶149.

"An indictment is duplicitous if it joins two or more distinct crimes in a single

count." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992).  The policy considerations

underlying prohibitions on duplicitous indictments include:  "[A]voiding the uncertainty of

whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of

not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any

one of the crimes charged, assuring the defendant adequate notice, providing the basis for

appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." Id..

A court may consider the record as a whole to determine whether an indictment is duplicitous.

See Walsh, 194 F.3d at 46.  With these principles in mind, I will address defendants' arguments

### i.       Count 1

Defendants argue that "Count 1(c) is a combination of counts three and four".

Omnibus Motion [16], ¶147.  While  defendants' motion is not clear in this regard, their

reference to "Count 1(c)" appears to be to the allegation that defendants conspired to commit

certain crimes, including violating 18 U.S.C. §1001(a).  See Indictment [1], p. 9, ¶2(c).

However, as the government argues (government's Consolidated Response [28], p. 36), "[t]he

allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the

conspiracy is the crime, and that is one, however diverse its objects". Braverman v. United

States, 317 U.S. 49, 54 (1942).


        **ii.**        **Count 3**

Defendants argue that Count 3, which is based on two alleged concealments of

material fact, are duplicitous. Omnibus Motion [16], ¶148. Relying on United States v. Schiff,

801 F.2d 108 (2d Cir. 1986), cert. denied, 480 U.S. 945 (1987), the government responds that

Count 3 is not duplicitous "because it conjunctively alleges two facts to have been concealed and

covered up". Government's Consolidated Response [28], p. 36. Schiff holds that "indictments

worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be

supported by proof of either of the conjoined means of violating the act." Schiff, 801 F.2d at

114. However, I am skeptical as to whether Schiff is applicable here.

"Under section 1001, in the course of a government proceeding, it is a crime (1) to

falsify, conceal or cover up a material fact, (2) to make a materially false statement, or (3) to

make or use a document containing a materially false statement. . . .  The several different types

of fraudulent conduct proscribed by section 1001 are not separate offenses . . . rather they

describe different means by which the statute is violated." United States v. Stewart, 433 F.3d

273, 319 (2d Cir. 2006) (citing 18 U.S.C. §1001(a)). Thus, corresponding with Schiff, "the

government could say within the same count that a particular statement was both a false

statement and concealment by scheme, because either is a violation of §1001". United States v.

Dedman, 527 F.3d 577, 600 n. 10 (6th Cir. 2008), cert. denied, 556 U.S. 1235 (2009). See United

States v. Hixon, 987 F.2d 1261, 1265 (6th Cir. 1993). It has not done this in Count 3. Instead, the

Indictment alleges that two material facts were concealed in violation of §1001(a)(1).

In any event, as the government also notes, "it is well settled law in this Circuit that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme'". Government's Consolidated Response [28], p. 35 (*quoting* United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989)). Thus, "[i]n the context of false statement cases under 18 U.S.C. §1001, the charging of multiple false statements in a single count is appropriate where the indictment also charges that the statements were made as part of a 'scheme' under §1001(a)(1)". United States v. McCafferty, 2011 WL 933771, *8 (N.D.Ohio 2011). *See* United States v. Perez, 2002 WL 1461504, *9 (N.D.Ill. 2002) ("section 1001 permits the charging of a scheme of crimes and that multiple acts within the scheme are considered one offense").

Moreover, even if Count 3 is duplicitous, the remedy is not dismissal. "An indictment may charge more than one false statement in the same count, so long as the jury is instructed that it must agree unanimously both that the defendant made at least one of the charged false statements, and which statement that was." United States v. Stern, 2003 WL 22743897, *2 (S.D.N.Y. 2003). *See* United States v. Crisci, 273 F.3d 235, 239 (2d Cir. 2001) (affirming conviction based upon single false statement count that charged seven separate false statements, where the jury was instructed that it "had to unanimously agree on 'any statement that the defendant made in violation of the false statement statute'"). Therefore, I recommend that defendants' motion to dismiss Counts 1 and 3 on duplicity grounds be denied.

h.      **Vindictive Prosecution**

Defendants seek dismissal of the Indictment, arguing that they were the subject of a vindictive prosecution. Defendants' Memorandum of Law [18-4], Point I; Omnibus Motion [16], Point III.

"[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor . . . , and a prosecutor's pretrial charging decision is presumed legitimate". United States v. Sanders, 211 F.3d 711, 716 (2d Cir.), cert. denied, 531 U.S. 1015 (2000). However, "[a]ctual vindictiveness must play no part in a prosecutorial . . . decision and . . . the appearance of vindictiveness must also be avoided." United States v. King, 126 F.3d 394, 397 (2d Cir. 1997). "A vindictive motive will be found where there is direct evidence of actual vindictiveness, or a rebuttable presumption of a vindictive motive may arise under certain circumstances." Id. Defendants rely primarily on actual vindictiveness, conceding that the "Second Circuit has found that the presumption *generally* does not arise in the pretrial setting". Defendants' Memorandum of Law [18-4], p. 12 n. 52 (emphasis in original). *See* United States v. Pacheco, 512 Fed.Appx. 112, 114 (2d Cir. 2013) (Summary Order) ("A defendant is generally not entitled to a presumption of prosecutorial vindictiveness in a pretrial setting").

To establish actual vindictiveness, a defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) he would not have been prosecuted except for the animus." United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999), cert. denied, 530 U.S. 1222 (2000). *See* Sanders, 211 F.3d at 716-17 ("To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's

charging decision was a 'direct and unjustifiable penalty' . . .  that resulted 'solely from the

defendant's  exercise of a protected legal right'" *quoting* United States v. Goodwin, 457 U.S. 368,

384 n. 19 and 380 n. 11 (1982)).  "A finding of actual vindictiveness requires 'direct' evidence,

such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'"

United States v. Johnson, 171 F.3d 139, 140-41 (2d Cir. 1999) (*quoting* Goodwin, 457 U.S. at

380  81, nn. 12  13, 384, n. 19).

To the extent defendants are also relying the on the rebuttable presumption of

vindictive prosecution, they "must show that the circumstances of a case pose a 'realistic

likelihood' of such vindictiveness. . . . The circumstances must present a realistic likelihood of

vindictiveness that would be 'applicable in all cases'".  Sanders, 211 F.3d at 717 (*quoting*

Goodwin, 457 U.S. at 381). This presumption is "overcome by objective evidence justifying the

prosecutor's action".  Goodwin, 457 U.S. at 376 n. 8.

Defendants' vindictive prosecution claim has its genesis in alleged conduct against

Acquest Wehrle, LLC, an entity solely owned by Huntress, that purchased property on Wehrle

Drive in Amherst, New York. Cahoon Declaration [18-1], ¶¶10, 11. In support of their motion,

defendants rely upon the Declaration of Bradley R. Cahoon, Esq. [18-1],  an attorney representing

defendants in connection with the pending civil litigation, which details what he characterizes as a

"overzealous pursuit based, apparently, on a desire to retaliate against Defendants . . . for refusing

to kowtow to EPA officials, filing a lawsuit against the EPA (Acquest Wehrle v. United States, et

al., 1:06-cv-00654 (W.D.N.Y. Filed September 29, 2006)), and challenging the EPA's authority to

regulate their property" (id., ¶7).

According to defendants, whereas the United States Army Corps of Engineers ("Corps") initially found in June 2001 that the wetlands on the Wehrle property were not subject to regulation under the CWA, the EPA later concluded in November 2002 that a portion of the wetlands were subject to its regulation (id., ¶¶12-14).  In March 2006, the Corps granted Acquest Wehrle a "Provisional Department of the Army Permit" to place "fill" in approximately 2.9 acres of wetlands on the Wehrle site, but  that provisional permit was later withdrawn by the Corps, which prompted a suit by Acquest Wehrle against the EPA and other individuals seeking among other things, a judgment declaring that the Corp's revocation of the provisional permit was unlawful (id., ¶¶17-18; Acquest Wehrle v. United States of America et. al., 1:06-cv-00654 (W.D.N.Y.)).

Pointing to the following  communications, which he alleges occurred upon information and belief,  Cahoon argues that "the EPA made clear that its battle with Defendant Huntress was more than just a routine investigation" (id., ¶15):

- -   "in January 2005, Phyllis Feinmark, EPA's Branch Chief of the Water and General Law Branch, told Fessard that the 'government does not care about money or time; Mr. Huntress does'" (id., ¶15);

- -   "outside of a settlement meeting . . . on November 29, 2006, Eric G. Hostetler, Senior Trial Attorney for the U.S. Department of Justice and attorney for the government defendants, threatened Mr. Huntress by stating, '[w]e have a lot of tools in the tool box!'" (id., ¶18);

- -      "on July 27, 2007, during another settlement conference, Acquest Wehrle argued that the EPA could not demonstrate that it had jurisdiction over its property under *Rapanos v. United States* . . . .   Walter Mugdan, the EPA Director for the Division of Environmental Planning and Protection, exclaimed in response, 'Let the Chief Justice try to enforce it!'  Mr. Mugdan then flew into a rage after Mr. Huntress called him by a presumed nickname, 'Wally.'  Mr. Mugdan yelled at Mr. Huntress that his name was 'Walter' and to never call him 'Wally' again." (id., ¶19); and

- -      "during a meeting with  Defendants, David Pohle, the EPA's Wetlands Enforcement Coordinator . . . , pointed at the storm drain on that property (now replaced by a lawn drain) and laughed, exclaiming, '[s]o this is the famous tributary [to navigable water]?!'" (id., ¶25).

Defendants further allege that following their suit against the EPA arising from the Wehrle property that the EPA "turned its attention to the [Site]" and "began taking enforcement actions" notwithstanding that it knew that the Site was not subject to EPA jurisdiction  (id., ¶¶20-23).  In response to their challenges to the EPA's jurisdiction, defendants allege that the government initiated its civil and criminal actions "to punish Defendants" (id., ¶24).  In support of this belief, Cahoon identifies the following communications:

- -      An internal Corps' e-mail dated December 21, 2007  stating, "[i]f it were another location owned by another entity EPA may have already closed the file and moved on" (id., ¶26, Ex. A [18-2], p. 2 of 21); and

- -      "upon information and belief and based on my conversation with Omar Abu-Sitta, an Acquest employee, in 2008, Myriah Jaworski, a then-intern at the U.S. Department of Justice and later an attorney in that division, warned Abu-Sitta that Huntress and the Acquest entities should settle with the government because the EPA and the DOJ did not care how much it would cost or how much time it would take to prevail. Ms. Jaworski mentioned working on a big case where the defendant was in the right, but the EPA and the DOJ refused to give up their enforcement stance" (id., ¶27).

In an attempt to link the animus allegedly harbored by the civil regulators to the criminal prosecution, defendants claim that there was coordination between the government's civil and criminal attorneys during the plea discussions in an attempt to obtain a resolution whereby they would give up their civil claims against the government in order to "shield[ ] the government from any repercussions for its misconduct".  Defendants' Memorandum of Law [18-4], p. 15.  In response, Assistant United States Attorney Aaron Mango submitted an Affidavit [28-1] stating that "[d]uring the entire time period that the criminal investigation and prosecution has been active . . . . I was never asked to pursue, nor did I pursue, criminal charges against the defendants in an attempt to retaliate against the defendants or based on any type of improper purpose" (id., ¶2).

As the government notes, fatal to defendants' argument is the absence of "any evidence that the civil regulators from the [EPA] or [Corps], or the civil government attorneys, ever prevailed upon the criminal prosecution team . . . to utilize the criminal proceedings for a benefit in the civil proceedings".  Government's Sur-Reply [37], p. 4. Defendants have also not established a "realistic likelihood" of vindictiveness.  "Such a presumption is not warranted

merely because the government commenced criminal proceedings against somebody who challenged the findings of a government agency." Sanders, 211 F.3d at 719. "Even assuming that the defendants were a thorn in the government's side, it does not follow that they were punished because they may have drawn blood." Id. at 718.

Further, a presumption of prosecutorial vindictiveness does not arise from the fact that defendants were indicted after they apparently rejected the government's plea proposal that included a condition that they dismiss their pending civil suits and cease any further litigation concerning the Site. See Avendano v. United States, 2009 WL 137035, *4 (S.D.N.Y. 2009) ("no rebuttable presumption arises from the Government's pre-trial decision to modify the charges against a defendant after the defendant refuses a plea offer"); Bordenkircher v. Hayes, 434 U.S. 357 (1978) (a presumption of vindictiveness does not arise from the prosecution seeking a superceding indictment following unsuccessful plea bargaining); Goodwin, 457 U.S. at 380 ("just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded"). If "the Constitution prohibited the continuation of a criminal prosecution supported by probable cause because the criminal defendant did not agree to execute a release of civil liability for claims arising from that prosecution, then such agreements would be virtually eliminated. Any time a prosecutor proposed such an exchange, the criminal defendant could reject the proposal and claim that any continuation of the prosecution violated the Constitution". Mozzochi v. Borden, 959 F.2d 1174, 1181 (2d Cir. 1992).

-30-

Relying on their PC Cropland and permit shield challenges, defendants also argue that "[i]n light of the government's knowledge of the legal and jurisdictional insufficiency of the present indictment . . . the . . . prosecution smacks of pure vindictiveness against defendants for having successfully secured a dismissal of the previous indictment based on prosecutorial misconduct". Omnibus Motion [16], ¶65. However, as discussed above, Judge Skretny's rejection of defendants' reliance on the PC Cropland and permit shield defenses undermines this argument. Moreover, as the government notes, these defenses would not provide defendants with "*carte blanche* to lie and obstruct a proper EPA investigation", the alleged conduct that is the subject of this Indictment. Government's Consolidated Response [28], p. 24. Therefore, I recommend that defendants' motions to dismiss the Indictment for prosecutorial vindictiveness be denied.

Alternatively, defendants seek "to obtain discovery into the prosecution's motives for bringing these charges". Defendants' Reply Memorandum of Law [34], p. 10. Since examination into "the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy" United States v. Armstrong, 517 U.S. 456, 465 (1996), the standard for obtaining discovery on a claim of vindictive prosecution is a "rigorous" one and presents "a significant barrier to the litigation of insubstantial claims". Id. at 464, 468; Sanders, 211 F.3d at 717. "[T]o obtain discovery on a claim of selective prosecution, . . . a defendant must provide some evidence tending to show the existence of the essential elements of the defense". Sanders, 211 F.3d at 717.

Thus, "the defendant must show 'some evidence' of 'genuine animus,' not the mere possibility that animus might exist under the circumstances". Id. at 718.

Defendants have not offered any evidence supporting their argument that the initiation of the criminal prosecution was influenced by the alleged animus of the civil enforcement officials. See Id. at 719 ("Absent any evidence that the prosecution was brought to punish the defendants or to retaliate against them for exercising their rights, the defendants were not entitled to discovery on the issue of actual vindictiveness"); United States v. Romano, 487 Fed.Appx. 607, 609 (2d Cir. 2012) (Summary Order) (affirming the denial of discovery into vindictive prosecution claim where the defendant "identified only a 'potential motive' for animus, which is insufficient even to merit discovery. . . and, in any event, fails to demonstrate that the state prosecutor 'prevailed upon' the federal prosecutor to file federal charges . . . . [and] offered no evidence that the federal prosecutors would not have filed charges but for the state prosecutor's animus").[16]  Therefore, I also conclude that the defendants have not established their entitlement to discovery concerning  their claim of vindictive prosecution.

---

[16]    Compare with United States v. Adams,  870 F.2d 1140, 1141 (6th Cir. 1989) (concluding that some evidence of prosecutorial vindictiveness had been offered where the plaintiff submitted an affidavit from a retired EEOC official expressing "a belief that 'the EEOC instigated and pushed the investigation and prosecution of [the plaintiff] as revenge against her because she filed the discrimination complaint and the subsequent lawsuit against the EEOC and because she declined to settle the lawsuit").

i.     **Prosecutorial Misconduct**

Defendants argue that dismissal of the Indictment is warranted based upon the prosecutor's violation of the New York State Rules of Professional Conduct, as well as EPA and DOJ policies. Defendants' Memorandum of Law [18-4], Point II. Since at least some of the parties' plea discussions were conducted by e-mail, neither party disputes that following the dismissal of the initial Indictment, but before the current Indictment was returned, AUSA Mango offered defendants a plea that was not conditioned on the dismissal of any of their civil actions. *See* April 26, 2013 e-mail [18-2], p. 8 of 21. It is also undisputed that a day after defendants filed an Amended Notice of Claim in Huntress, *et al.* v. Mugdan, *et al.*, 12-CV-559, which increased their damages claim from approximately $65 million to $247 million, AUSA Mango changed the proposed plea to include a condition that defendants dismiss their civil suits (12-CV-1146 and 12-CV-559) and "[a]gree not to file any further lawsuits against the government relating to the . . . Site". *See* September 6, 2013 e-mail [18-2], p. 10 of 21; Cahoon Declaration [18-1], ¶53.[17]

Notwithstanding their agreement as to these facts, the parties strongly dispute the government's motivation for seeking this additional condition. Defendants speculate that "the civil and criminal government attorneys were apparently coordinating their approach to plea negotiations to exercise maximum leverage against Defendants . . . . so that [they] would be

---

[17]     AUSA Mango represented at the oral argument that he did not learn of the Amended Notice of Claim until after his September 6, 2013 e-mail. June 5, 2014 transcript [44], p. 7. As an officer of the court, I trust this representation, which is supported by the e-mail communications between the parties. Although the Amended Notice of Claim was filed on September 5, 2013, a courtesy copy of the Amended Notice of Claim was not e-mailed to the government's civil attorneys until September 6, 2013 at 5:49 p.m. ([18-2], p. 6 of 21), which was after AUSA Mango sent his September 6, 2013 e-mail at 12:36 p.m. requesting the dismissal of civil actions and cessation of further lawsuits regarding the Site (id., p.10 of 21).

placed in a position of either putting liberty . . . on the line or giving up their chance to redress

over a decade of wrongful conduct". Defendants' Memorandum of Law [18-4], pp. 20-21. By

contrast, AUSA Mango states that "I was never asked by the civil government attorneys to seek a

dismissal of any of the claims being made in the civil suits, nor was it ever requested of me to

somehow leverage the criminal case to gain a benefit in any of the civil cases". Mango Affidavit

[28-1], ¶2. The government explains that the dismissal of the defendants' civil suits was sought in

an effort "to avoid the logical inconsistency of the defendants pleading guilty to a crime yet while

contemporaneously maintaining that the criminal prosecution team acted improperly in

investigating and prosecuting them". Government's Sur-Reply [37], p. 6.[18]

Indeed, during the course of the parties' plea discussions, AUSA Mango offered

this same explanation to Paul Cambria, defendants' criminal attorney. *See* September 6, 2013 e-

mail [18-2], p. 12 of 21 ("Please understand that with this plea, as with every plea we enter, one of

our primary objectives is to secure finality in our resolution. The civil lawsuits I referenced . . .

were filed after the criminal case was initiated, and appear to have been filed in response to our

criminal prosecution. As such, it is our view that the civil they [*sic*] are ancillary to it. All we are

trying to do is cease the ancillary litigation related to the Transit Road site, but still let your client

contest the wetland designation of the Site in EPA's enforcement action"); September 13, 2013 e-

mail [18-2], p. 17 of 21.[19]

---

[18]      At the June 5, 2014 oral argument, defendants' counsel acknowledged that he did not object to the government's sur-reply. Transcript of the June 5, 2014 oral argument [44], p. 13 of 49.

[19]      Mr. Cambria submits no affidavit (or declaration) in support of defendants' motion to dismiss for vindictive prosecution.

Agreements to dismiss criminal charges for the release of civil claims are not improper. Such agreements are "enforceable when (1) obtained by a voluntary and informed action, (2) supported by legitimate law enforcement objectives or public interest motives, and (3) untainted by prosecutorial misconduct". Goston v. Buffalo Municipal Housing Authority, 1992 WL 198358, *4 (W.D.N.Y. 1992) (Skretny, J.) (citing Town of Newton v. Rumery, 480 U.S. 386, 399 (1987) (such agreements may "reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action")). See Mozzochi, 959 F.2d at 1181 ("Where a criminal prosecution remains supported by probable cause, the Constitution does not necessarily prohibit the prosecutor from seeking a release-dismissal agreement with the criminal defendant").

However, New York State Rule of Professional Conduct 3.4(e),[20] prohibits a lawyer from "threaten[ing] to present criminal charges *solely* to obtain an advantage in a civil matter" (emphasis added).[21] Significantly, this Rule "does not prohibit all threats to present criminal charges; it prohibits only those that are made 'solely to obtain an advantage in a civil matter.' For that reason, ethics opinions and court decisions in other jurisdictions have found no violation . . . when the threat of presenting criminal charges is intended for a purpose other than obtaining an advantage in a civil matter." New York Bar Association Committee on Professional

---

[20]    Disciplinary Rule 7-105(A) was the predecessor to Rule of Professional Conduct 3.4(e)

[21]    The Rules of Professional Conduct are applicable to government attorneys. *See* 28 U.S.C. §530B(a).

Ethics Opinion No. 772, 2003 WL 23099784, *6 (November 14, 2003).[22]  Nonetheless, "when a lawyer threatens to present criminal charges unless an action is taken which remedies a civil wrong, a presumption is likely to arise that [Rule of Professional Conduct 3.4(e)] has been violated".  Id., *7.

Notwithstanding any presumption that may have arisen from the condition in the government's plea proposal requiring defendants to dismiss their civil suit and to refrain from further civil litigation concerning the Site, I credit AUSA Mango's representations that there was no collusion between the government's civil prosecution team and him in seeking this as a condition to the criminal plea, but rather resulted from a legitimate concern of there being an incongruity between defendants' acceptance of a criminal plea and their simultaneous maintenance of civil suits challenging the criminal prosecution.  The government also persuasively argues that  "[t]here is no basis to conclude that the criminal prosecution team, which had spent years investigating the case, was solely proceeding so as to provide civil attorneys a benefit, especially in light of the fact that the First Indictment had been sought and returned".  Government's Consolidated Response [28], pp. 16-17.

For these reasons, I likewise reject defendants' arguments that AUSA Mango's conduct violated Environmental and Natural Resources Division Directive 2008-02 (§V), which states that "[c]riminal prosecution shall not be used as a threat to obtain civil settlement" and that "[i]n general, criminal plea agreements and civil settlements shall be negotiated separately", or the

---

[22]        "[W]ell-established principles of federalism require that federal courts not be bound by either the interpretations of state courts or opinions of various bar association committees. . . . Although these precedents are no doubt helpful, they should be relied upon only to the extent that they are compatible with federal law and policy".  Grievance Committee for Southern District of New York v. Simels, 48 F.3d 640, 645 (2d Cir. 1995).

United States Attorneys Manual ("USAM") (§9-16.300), which states that "[p]lea agreements should honestly reflect the totality and seriousness of the defendant's conduct".  Defendants' Memorandum of Law [18-4], pp. 18-19.[23]  Therefore, I recommend that this motion be denied.

### j.     Selective Prosecution

Pointing to a series of examples, defendants allege, upon information and belief, that the owners of adjoining properties have conducted fill and earthmoving activities without a permit, but have not faced enforcement actions from government agencies.  Cahoon Declaration [18-1], ¶30.  Defendants argue that this "strongly suggest[s] that this prosecution is punishment for [their] challenges to the government's authority to regulate their property".  Defendants' Memorandum of Law [18-4], p. 15.

As with vindictive prosecution claims, "because the United States Attorneys are charged with taking care that the laws are faithfully executed, there is a 'presumption of regularity support[ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties'" United States v. Sanchez, 517 F.3d 651, 671 (2d Cir. 2008) (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the

---

[23]     Defendants also rely upon §9-113.100 of the USAM applicable to civil forfeitures, which provides that "[t]he critical principle that must be applied to all settlements is that civil forfeiture, either judicial or administrative, should not be used to gain an advantage in a criminal case".  Defendants' Memorandum of Law [18-4], p. 19. However, defendants' argument is not that the government leveraged its civil suits against them in order to gain an advantage in the criminal case.  Therefore, I find their reliance on this section of the USAM to be inapposite.

Constitution." Armstrong, 517 U.S. at 463. Since "[a] selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive", the standard for demonstrating such a claim "is a demanding one". Id. at 463-64.

Specifically, to support a defense of selective prosecution, the defendant must make at least a *prima facie* showing "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights". United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974). Standing alone, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation". Oyler v. Boles, 368 U.S. 448 (1962).

To merit discovery on a selective prosecution claim, the same standard used for a vindictive prosecution claim is applied - namely, the defendant must offer "some evidence tending to show the existence of the essential elements of the defense". Berrios, 501 F.2d at 1211-212. *See* Sanders, 211 F.3d at 717.

Whereas the current prosecution is based on allegations that defendants lied and obstructed the EPA's investigation of the Site, the government notes that "defendants have not claimed that similar alleged acts of obstruction occurred with respect to the other properties listed". Government's Consolidated Response [28], p. 16. For this reason, I conclude that defendants have not demonstrated that they are similarly situated to the property owners around

-38-

them.  Therefore, I deny their request for discovery and recommend that their  motion to dismiss the Indictment for selective prosecution be denied.

### 2.        Motion to Suppress Evidence

Defendants move to suppress all evidence seized pursuant to Magistrate Judge Hugh B. Scott's July 28,  2008 administrative warrant issued pursuant to 33 U.S.C. §1318(a) for the Site. Omnibus Motion [16], ¶¶150-69.[24] The warrant, which was supported by the Affidavit of David G. Pohle ([20-12]), an Environmental Scientist with the EPA, and a Memorandum of Law ([20-14]), stated that "probable cause" exists to "conduct an inspection of the property pursuant to . . . 33 U.S.C. §1318(a), to determine whether the Property contains federally regulated wetlands, and to determine whether activity on the Property has been and/or is being conducted in violation of . . . 33 U.S.C. §§1311(a) and 1344(a)". [20-11], pp. 2-3 of 5.

Both the warrant ([20-11], p. 3 of 5) and the Pohle Affidavit ([20-12], ¶3) describe the Site as "essentially unmarked vacant land" that consists of "mostly open fields, with some forested areas" with "only two commercial structures". The government alleges and defendants do not dispute that "soil and flora samples" were seized during the execution of the warrant. Government's Consolidated Response [28], p. 45.

While acknowledging that the warrant is subject to a "reduced probable cause standard" applicable to administrative warrants (Omnibus Motion [16], ¶150), defendants argue that even under this standard, Pohle's "speculative allegations . . . fail to provide reasonable cause

---

[24]        Although captioned as an "Order for Entry on Open Land to Delineate Federal Wetlands and to Search for Suspected Violations of the [CWA]" ([20-11]), both parties refer to it as a warrant.

that defendants or anyone else violated federal law". Id., ¶161.  As defendants note, "[t]he government substantially ignore[s]  the facial sufficiency issues regarding the warrant". Cambria Declaration [35], p. 25 of 33, n. 12.  Instead, it argues that even if the search warrant was not valid, "the search of the Site and the samples seized thereon were perfectly lawful under the open fields and other doctrines".  Government's Consolidated Response [28], pp. 45-46.

The "open fields" doctrine recognizes that "the special protection accorded by the Fourth Amendment to the people in their persons, houses, papers, and effects, is not extended to the open fields."  Oliver v. United States, 466 U.S. 170, 176 (1984).[25]  However, it "only allows a search of what is in plain view in the open field".  United States v. Pennington, 287 F.3d 739, 745 (8th Cir.), cert. denied, 537 U.S. 1022 (2002).

Defendants do not appear to dispute that the Site constituted an open field. Instead, they respond that "an 'effect' located in an otherwise 'open field' . . . is still protected under the Constitution", and that the samples seized by the government during the execution of the warrant constitute "effects", which required a valid warrant to seize.  Omnibus Motion [16], ¶¶165-66; Cambria Reply Declaration [35], ¶57 ("defendants do not assert that the property lot **itself** is an 'effect,' only the items seized by the government (*i.e.*, the liquid and solid matter samples)" (emphasis in original)).[26]

_____

[25]     "The Framers would have understood the term 'effects' to be limited to personal . . . property." Oliver, 466 U.S. at 177.

[26]     Although not raised by the government, there is some case authority supporting that the taking of soil samples may fall within the ambit of an open fields search.  *See* United States v. Fahey, 769 F.2d 829, 837-38 (1st Cir. 1985) (rejecting the defendant's argument that the taking of a soil sample for testing exceeded the scope of the open fields doctrine). *See also* United States v. Carasis, 863 F.2d 615, 616 -17 (8th Cir. 1988) (taking of a "'sample  of [a] dark colored waste substance . . . from the ground'" was within the open field doctrine).

Relying on United States v. Fillers, 2011 WL 2437136, *3 (E.D. Tenn. 2011), aff'd sub nom., United States v. Mathis, 738 F.3d 719 (6th Cir. 2013),[27] the government appears to argue that the samples were validly seized under the "plain view" doctrine.  Government's Consolidated Response [28], p. 45.  In Fillers, air pollution inspectors entered a site that consisted of old demolished buildings based on their belief that some of the debris contained asbestos that had not been properly disposed of.  Fillers, 2011 WL 2437136, *2, 7.  The inspectors entered the property and seized "three samples of suspected  asbestos-containing material" that were "were lying out in the open", which were sent to a laboratory for testing.  Id., *2.  The court concluded that the open fields doctrine gave the inspectors authority to conduct a warrantless entry onto the site.  With respect to the seized samples, it concluded that the "open fields doctrine does not preclude subsequent application of the plain view doctrine".  Id., *6.  Since the agents had probable cause to believe that the samples they collected contained asbestos, the court concluded that the seizure was justified by the plain view doctrine and did not violate the Fourth Amendment.  Id.,*7-8; Mathis, 738 F.3d at 733.[28]

Defendants argue that unlike Fillers, "[t]his is not a scenario . . . where the items seized are themselves contraband, as dirt, fill and water are not certainly illegal to possess".  Cambria Reply Declaration [35], ¶57.  However, "[t]he plain view doctrine applies to objects which are not in and of themselves contraband, so long as the incriminating nature of the object is

---

[27]     The Magistrate Judge's  Report and Recommendation (United States v. Watkins Street Project, LLC, 2010 WL 6789313 (E.D. Tenn. 2010)), which was adopted in Fillers, is also instructive.

[28]     An evidentiary hearing was conducted In Fillers.  While defendants broadly request that hearings be conducted "regarding all requests for relief" (Omnibus Motion [16], ¶205), they do not dispute the factual representations made by the government concerning the search.  Therefore, I conclude that a hearing is not warranted.

readily apparent or the object is or contains evidence of a crime."  United States v. Delva,

__F.Supp.2d__,  2014 WL 1378770, *5 (S.D.N.Y. 2014).  Thus, like the asbestos samples in

Fillers, the soil and flora samples taken here were not themselves contraband.  Nonetheless, the

plain view doctrine permitted their seizure as evidence of a crime.

        In a further attempt to distinguish Fillers, defendants argue that the property in that

case "had partially demolished buildings that provided probable cause that asbestos was present".

Cambria Reply Declaration [35], ¶58.  However, the government represents, and the defendants

do not dispute, that "regulators could see, from the road, massive earth clearing activities and

were able to observe substantial water/sediment run-off pouring off the Site and making its way to

other water bodies", and that  "[o]nce on the Site, the investigators and regulators were collecting

readily apparent soil and flora samples they could easily determine through their training and

experience to implicate the presence of wetlands".  Government's Consolidated Response [28], p.

45. Therefore, I recommend that defendants' motion to suppress be denied.


    **3.**        **Motion for a Franks Hearing**

        Defendants argue that a Franks hearing is warranted because the Pohle Affidavit

omitted any reference to the 1987 PC Cropland determination.  Omnibus Motion [16], ¶¶154-55.

"To secure a Franks hearing, a defendant must both (1) make a 'substantial preliminary showing

that a false statement knowingly and intentionally, or with reckless disregard for the truth, was

included by the affiant in the warrant affidavit' and (2) show that 'the allegedly false statement

[was] necessary to the finding of probable cause'".  United States v. Morris, 2013 WL 335980, *1

(2d Cir. 2013) (Summary Order) (quoting Franks, 438 U.S. at 155  56).  "Omissions from an

affidavit that are claimed to be material are governed by the same rules." United States v. Ferguson, 758 F.2d 843, 848 (2d Cir.), cert. denied, 474 U.S. 1032 (1985).   "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

Without conceding the applicability of the Franks standard to administrative warrants, the government challenges both prongs of the Franks analysis.  With respect to the first prong, it argues that exclusion of the PC Cropland exemption "amounts to nothing more than a legal agreement" and  that the EPA was not "required to prove jurisdiction nor disprove the applicability of the [PC Cropland] exception".  Government's Consolidated Response [28], pp. 39-40.  I agree with the government.

An applicant for a warrant "does not *necessarily* act with reckless disregard for the truth simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be clearly critical. Rather, the reviewing court must be presented with credible and probative evidence that the omission of information in a[n] . . .  application was designed to mislead or was made in reckless disregard of whether it would mislead." United States v. Rajaratnam, 719 F.3d 139, 154 (2d Cir. 2013), cert. denied, __ U.S. __, 134 S.Ct. 2820 (2014) (emphasis in original) (addressing wiretap warrant).

"Of course, the reckless disregard aspect of a Franks inquiry can sometimes be *inferred* from the omission of critical information in a[n] . . .  application. . . .  Subjective intent, after all, is often demonstrated with objective evidence.  But such an inference is not to be automatically drawn simply because a reasonable person would have included the omitted

-43-

information, . . .  and the inference is particularly inappropriate where the government comes

forward with evidence indicating that the omission resulted from nothing more than negligence, or

that the omission was the result of a considered and reasonable judgment that the information was

not necessary to the . . . application." Id. at154-55 (emphasis in original).  *See* United States v.

Barnes, 399 F.Supp.2d 169, 182 (W.D.N.Y. 2005) (Arcara, J./Foschio, M.J.) ("Allegations that

amount to negligence or innocent mistake do not constitute the required showing.  The focus is

not on whether a mistake was made, but rather on the intention behind the mistake").

Although the application did not mention the 1987 PC Cropland determination, it

did not hide the fact that defendants had challenged the EPA's jurisdiction over the Site.  The

Memorandum of Law ([20-14]) supporting the application discussed defendants' claims that the

Site was being used for agricultural purposes (id., p. 10 of 18) and addressed whether the EPA

was required to prove jurisdiction[29] or disprove the applicability of the "farming exception" in

order to obtain the warrant (id., pp. 11-15 of 18).

---

[29]     Defendants acknowledge that there is "some support in the case law" that it is not a
Fourth Amendment violation to permit the EPA a right of entry to determine if there is jurisdiction under
the CWA. Omnibus Motion [16], p. 92 n. 36.  Instead, they request in a footnote that "this Court consider
the *Fifth Amendment* implications of defendants being compelled under the guise of §1318 to provide -
via the agents' entry onto their land - potentially incriminating evidence against themselves . . . . [and]
also ask that this Court re-examine a modified argument of the *Thirteenth Amendment* (involuntary
servitude) rejected in [United States v. Tivian Laboratories, 589 F.2d 49, 54 (1st Cir. 1978)]". Id.
(emphasis in original)  Even if defendants had moved for specific relief pursuant to the Fifth and
Thirteenth Amendments, their bare bones arguments are insufficient to establish their entitlement to any
relief. *See* United States v. Fuentes, 2012 WL 4754736, *3 (W.D.N.Y.), adopted 2012 WL 4754744
(W.D.N.Y.2012) (Arcara, J.) (Defendant's "arguments are . . . largely conclusory, boilerplate,
undeveloped and bereft of any supporting case authority. To the extent his arguments are raised in such a
fashion, I consider them waived, and recommend the denial of this aspect of defendant['s] ... motion on
this basis").

Further, as the government notes, it has "consistently taken the position that the Site . . . falls well short of the [PC Cropland] exemption". Government's Consolidated Response [28], p. 40.  Thus, even if its "interpretation . . . ultimately proves incorrect in the eyes of the Court, the representations in the affidavit were neither intentional nor reckless".  Id.  Under these circumstances, defendants have Cropland designation from the application supporting the warrant was a deliberate falsehood or in reckless disregard for the truth.

In any event, as the government notes, even if the PC Cropland designation had been included in the supporting application, "the affiant also would have mentioned the demonstrably fraudulent nature of the farming" and "would not have undermined the lowered probable cause determination".  Government's Consolidated Response [28], p. 41.  Therefore, I also conclude that defendants have not established the second prong necessary to establish their entitlement to a Franks hearing, and recommend that defendants' motion for a Franks hearing be denied.


4.      **Motion for Production of Grand Jury Minutes and Instructions**

Rule 6(e)(2)(B) provides that, with limited exceptions,  a government attorney must not disclose a "a matter occurring before the grand jury".  Among the exceptions to grand jury secrecy, the court may permit disclosure "preliminarily to or in connection with a judicial proceeding" (Rule 6(e)(3)(E)(i)) or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury".  Rule 6(e)(3)(E)(ii).

"Grand jury proceedings carry a 'presumption of regularity.'" United States v. Torres, 901 F.2d 205, 232 (2d Cir.), cert. denied, 498 U.S. 906 (1990), overruled on other grounds as recognized by, United States v. Marcus, 628 F.3d 36 (2d Cir. 2010) (quoting Hamling v. United States, 418 U.S. 87, 139 n. 23 (1974)). See United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct"). "The burden is on the party seeking disclosure to show a particularized need that outweighs the need for secrecy." In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir.1996) (emphasis added). See United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." Torres, 901 F.2d at 232.

In connection with several of defendants' dismissal motions, they seek, in the alternative, production of the grand jury minutes and instructions. Omnibus Motion [16], Points V-VI.  However, the arguments offered in support of this relief are scant. The only specific arguments raised by defendants are addressed below.

In challenging the facial sufficiency of Count 2 charging defendants with obstruction of justice, they argue that since they relied in good faith on their counsel in determining what responses to provide to the EPA's inquiries, which is a defense to the charge, "how the grand jury was instructed [on this defense] . . . is crucial".  Omnibus Motion [16], ¶¶110-11.  As support for this argument, defendants rely upon United States v. Stevens, 771 F.Supp.2d 556, 566 -67 (D.Md. 2011), which recognized that "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts grave doubt that the decision to indict was free from the

substantial influence of the erroneous instruction".  However, <u>Stevens</u> addressed whether

dismissal of an indictment was warranted based on an erroneous instruction to the grand jury

concerning the advice of counsel defense, not whether the disclosure of grand jury materials was

warranted.[30]  Significantly, it also recognized that the government is not "required to anticipate

and present all of a defendant's  affirmative defenses to the grand jury".  <u>Id</u>.

In any event, defendants do not offer any support for their argument that the grand

jury was erroneously instructed.  Indeed, they do not even specifically allege that the grand jury

was erroneously instructed. As characterized by the government, defendants' request for the grand

jury instructions appears to be a "fishing expedition". Government's Consolidated Response [28],

p. 48.  *Compare with* <u>United States v. Mix</u>, 2013 WL 2458846, *3-4  (E.D.La. 2013) (where the

defendant was charged with obstruction of justice relating to the deletion of voice mails, the court

ordered an *in camera* inspection of the grand jury instructions when the defendant questioned,

based on forensic evidence indicating that the voice mails were automatically deleted by the

service provider, how a grand jury that was appropriately apprised of the evidence and correctly

instructed could have found probable cause for the charge).

---

[30]     In <u>Stevens</u>, the defendant similarly moved for the production of the grand jury
instructions, arguing that the government "may have failed to properly instruct the grand jury regarding
the advice of counsel defense".  771 F.Supp.2d at 564.  However, unlike here, in response, the
government made an  *in camera* submission conceding that a grand juror had asked a question about the
advice of counsel defense, and that a response was given.  The court then ordered the grand jury
transcripts disclosed for its *in camera* review. <u>Id</u>.

With respect to their facial sufficiency challenge to Count 5 of the Indictment, defendants argue that "the grand jury minutes should be produced as to enable the Court to make a determination as to the sufficiency of said evidence". Omnibus Motion [16], p. 81.  However, "[t]he Court will not review the minutes of grand jury testimony on a general claim that the evidence presented was insufficient". <u>United States v. Cuevas</u>, 1989 WL 28461, *2 (S.D.N.Y.1989).

In seeking dismissal of Counts 1 through 4 of the Indictment as being multiplicitous, defendants alternatively seek disclosure of the grand jury materials, "remind[ing] this Court that *because of this multiplicity issue*, they are unable to know whether the grand jurors voted to indict based on sufficient evidence individually supporting the §1519, §1001(a)(1) and §1001(a)(2); or whether it was from partial evidence from one or more of the counts built cumulatively that resulted in an indictment on the conspiracy count". Omnibus Motion [16], ¶144 (emphasis added).  However, having concluded that Count 1 is not multiplicitous as to Counts 2, 3 and 4, I see no reason for disclosure of the grand jury materials concerning these counts.

In connection with their duplicity arguments, defendants seek production of the grand jury minutes and instructions by arguing that "12 jurors must have voted for *each* separate offense", but "where a count alleges multiple offenses, as these counts do at bar, it is unknown whether this occurred".  Omnibus Motion [16], ¶149 (emphasis added).  However, having concluded that the counts are not duplicitous, I likewise conclude that there is no reason to order disclosure of the requested grand jury materials.

5.      **Motion for a Bill of Particulars**

Arguing that "their ability to prepare a defense will . . . be significantly impaired",
defendants seek numerous particulars concerning all counts of the Indictment. Omnibus Motion
[16], ¶175.  In response, the government argues that a bill of particulars is not necessary given that
the Indictment "is highly detailed" and it has produced 137,000 pages of discovery on DVDs that
are "readily loadable into a searchable format" and accompanied by an index of these materials.
Government's Consolidated Response [28], pp. 50-53.

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with
sufficient particularity the nature of the charge pending against him, thereby enabling defendant to
prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be
prosecuted a second time for the same offense".  United States v. Bortnovsky, 820 F.2d 572, 574
(2d Cir. 1987).  "A bill of particulars is required only where the charges of the indictment are so
general that they do not advise the defendant of the specific acts of which he is accused."  United
States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  "[T]he burden is upon defendants to show that
non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would
adversely affect defendants' rights".  United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y.
2014) (Scott, M.J.).

"In deciding a motion for a bill of particulars, the important question is whether the
information sought is necessary, not whether it is helpful."  United States v. Conley, 2002 WL
252766, *4 (S.D.N.Y. 2002).  A bill of particulars "should not function to disclose evidence,
witnesses, and legal theories to be offered by the Government at trial or as a general investigative
tool for the defense".  United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). *See* United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

I recognize that a large volume of discovery may warrant "a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial". United States v. Mahaffy, 446 F.Supp.2d 115, 120 (E.D.N.Y.2006). However, here I conclude that the organized production of discovery, when coupled with the detailed allegations of the 27-page Indictment, provides defendants with a sufficient roadmap of the charges against them to enable them to prepare for trial and to prevent surprise. *See* United States v. Ferguson, 478 F.Supp.2d 220, 227 (D.Conn. 2007) ("Given the degree of detail in the indictment and the government's provision of searchable discovery databases and a list of its key documents, the defendants have not proven that they require more particularization to adequately prepare their defenses, avoid prejudicial surprise at trial, and protect against future double jeopardy"). Therefore, defendants' motion for a bill of particulars is denied.

6.        **Motion for Rule 16 Discovery and for Notice of Intention Pursuant to Rule 12**

The government "represents that its productions to date have fully satisfied its obligations under Fed. R. Crim. P. 16(a)", and that "[a]s new information comes into the United States' custody and control, it will produce such materials to the defendants in an expeditious manner". Government's Consolidated Response [28], p. 56. At this point, I have no reason to question the government's representations. *See* United States v. Johns, 336 F.Supp. 2d 411, 424 (M.D.Pa. 2004) ("The court is entitled to rely on the representations of counsel, as officers of the court"); Theodore v. State of New Hampshire, 614 F.2d 817, 822 (1st Cir.1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him"). Indeed, defendants acknowledge that the government has voluntarily produced "well in excess of 110,000 pages", and that their motion is merely "brought to preserve [their] discovery rights". Omnibus Motion [16], ¶176.[31] Therefore, defendants' motion for Rule 16 discovery is denied, without prejudice.

Related to the defendants' motion for Rule 16 discovery, they challenge the sufficiency of the government's privilege log [20-15]. Defendants seek to have the government provide specific "legal authority for any privileged claim, as well as an interpretation of all codes and letters set out in the chart, so that the defense may address the claim privileges for these items". Omnibus Motion [16], ¶187. In response, the government identifies the acronyms used in its privilege log (government's Consolidated Response [28], p. 58, n. 17), but declines to amend

---

[31]        Defendants do not seek any expert-related discovery pursuant to Rule 16(a)(1)(G). *See* Omnibus Motion [16], ¶176.

the privilege log with legal authority for the asserted privileges, arguing that defendants fail to cite any authority requiring a privilege log to include such information (id., p. 58).

Drawing upon Fed. R. Civ. P. 26(b)(5)(A)(ii), a privilege log is only required to "describe the nature of the documents . . . not produced . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim". *See* United States v. O'Keefe, 252 F.R.D. 26, 29 (D.D.C. 2008) (borrowing the requirements of Fed. R. Civ. P. 26(b)(5) for a privilege log in a criminal case); United States v. Hackett, 2011 WL 5323506, *3 (N.D.W.Va.), adopted, 2011 WL 5244695 (N.D.W.Va. 2011) (same). The government's privilege log [20-15] satisfies these requirements and permits defendants to address the claimed privileges. Therefore, defendants' request for a more detailed privilege log is denied. Likewise, given the sufficiency of the privilege log, I deny defendants' alternative request that I conduct an *in camera* review of these documents to assess the government's assertions of privilege. *See* Cambria Reply Declaration [35], ¶63.

Pursuant to Rule 12(b)(4)(B) defendants further seek notice of the government's intent to use at trial evidence that they may be entitled to discover under Rule 16. The government does not specifically respond to this request. Therefore, this portion of defendants' motion is granted. *See* United States v. Brown, 2010 WL 4703503, *3 (W.D.N.Y. 2010) (Schroeder, M.J.).

### 7.    Motion for Early Disclosure of Jencks Act (18 U.S.C. §3500) Material

In response to defendants' request that all Jencks Act material be produced 30 days in advance of trial (Omnibus Motion [16], ¶186), the government represents that it has "already turned over the yeoman's portion of Jencks material" but "[t]o the extent that the defendants . . .

seek to bind [it] to the pretrial disclosure of Jencks statements it must be denied as it runs afoul of the timetables set by statute and Fed. R. Crim. P. 26.2".  Government's Consolidated Response [28], p. 59.

I agree with the government.  "Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* United States v. Coppa, 267 F.3d 132,145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); United States v. Seabrook, 2010 WL 5174353, *3 (S.D.N.Y. 2010) ("The Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v. Exolon  Esk Co., 1995 WL 46719, *3 (W.D.N.Y.1995) (Skretny, J.) ("it is . . . uniformly recognized that a district court generally lacks authority to order pretrial production of Jencks materials over an objection by the government"). Therefore, defendants' motion is denied.

### 8.     Motions for Pretrial Disclosure of Brady/Giglio Material and to Search Personnel Files for Such Material[32]

Defendants seek pretrial disclosure of all materials under Brady, Giglio, and their progeny, and make a number of specific requests for materials they contend fall within the ambit of this authority.  Omnibus Motion [16], ¶¶188-92.  In response, the government represents that it "believes it has already disclosed all Brady/Giglio material currently in [its] possession", but

---

[32]     Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).

"should any further <u>Brady</u>/<u>Giglio</u> material arise, [it] acknowledges its duty to provide that material to the defendants".  Government's Consolidated Response [28], pp. 60-61.

Notwithstanding these representations, the government does not appear to agree that all of  defendants' itemized requests (Omnibus Motion [16], ¶188) properly fall within the scope of <u>Brady</u> and its progeny.  *See* Government's Consolidated Response [28], p. 60.  However, in reply, defendants have not identified any specific request that they believe falls within <u>Brady</u>, but has not been produced.  Therefore, based on the government's representations, defendants' motion for production of <u>Brady</u>/<u>Giglio</u> material is denied, without prejudice.

Although the government represents that it believes it has already disclosed all <u>Brady</u>/<u>Giglio</u> material currently in its possession, it does not specifically respond to defendants' motion that it be required to search their personnel files to determine if <u>Brady</u> /<u>Giglio</u> material exists. Omnibus Motion [16], Point XVI.  Therefore, this motion is granted.


9.      **Motion for Disclosure of Informant Identities**

The government represents that it "did not utilize any informants during the investigation of this case".  Government's Consolidated Response [28].  Therefore, this motion (Omnibus Motion [16], ¶¶193-97) is denied as moot.


10.      **Motion for Pretrial Disclosure of Fed. R. Evid. 404(b) Material**

Defendants move pursuant to Fed. R. Evid. 404(b) "for the pre-trial disclosure of any such evidence the government seeks to proffer at trial and for the exclusion of evidence found inadmissible pursuant to [Fed. R. Evid.] 403 and 404(b)".  Omnibus Motion [16], ¶198. To the

extent the government responds that it "will provide notification of any Rule 404(b) evidence it intends to introduce at trial well in advance of trial" (government's Consolidated Response [28], p. 61), that portion of defendants' motion is denied as moot.

"The issue of admissibility of such evidence, as raised in the defendant[s'] request, pursuant to [Fed. R. Evid.] 404(b) . . . is best left to the determination of the trial judge at the time of trial." United States v. Whitely, 2014 WL 2765804, *5 (W.D.N.Y. 2014) (Schroeder, M.J.). Therefore, that portion of the defendants' motion is also denied, without prejudice to renewal before the trial judge.

### 11.    Motion for Preservation of Evidence

Defendants move for an order directing the government to preserve information related to this investigation.  Omnibus Motion [16], ¶200.  In response, the government states that it "has already issued multiple litigation hold letters to the investigation/prosecution team".  Government's Consolidated Response [28], p. 58.  Based upon the government's representation, defendants' motion is denied.

### 12.    Motion Disclosure of Residual Hearsay Exception Statements Pursuant to Fed. R. Evid. 807

Defendants seek an order requiring the government to immediately comply with Fed. R. Evid. 807 by notifying them of its intention to offer any statements covered by the residual hearsay exception. Omnibus Motion [16], ¶202.  The government responds that it "currently does not intend to introduce any statement falling within the residual hearsay exception", but agrees

that if it later finds the exception applicable, it will provide defendants with sufficient notice to "permit defendants a fair opportunity to prepare to meet the testimony". Government's Consolidated Response [28], p. 57. Based on these representations, defendants' motion is denied.

### 13.    Motion for Recusal

Defendants move to recuse Judge Skretny from this case because he issued the July 15, 2009 Decision and Order, which is the subject of the contempt charge of the Indictment. Omnibus Motion [16], ¶¶170-72. As I advised the parties at the June 5, 2014 oral argument, this motion will be addressed by Judge Skretny. Transcript of the June 5, 2014 proceeding [44], p. 46.

### 14.    Motion for Leave to Make Other Motions

Defendants seek leave to file additional motions, if necessary. Omnibus Motion [16], ¶203. This motion is denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(e).

### B.    Government's Cross-Motion for Reciprocal Discovery

The government seeks "a date certain for the defendants to produce reciprocal discovery pursuant to Rules 16(b)(1)(A), 16(b)(1)(B), 12.1, 12.2, and 12.3". Government's Consolidated Response [28], p. 67.[33] In response, defendants represent that "at this time" they are

---

[33]    As discussed above, defendants do not seek any expert-related discovery pursuant to Rule 16(a)(1)(G). *See* Omnibus Motion [16], ¶176. Correspondingly, the government does not seek any reciprocal expert discovery pursuant to Rule 16(b)(1)(C). *See* Government's Consolidated Response [28], p. 55.

"not intending on pursuing any defense under Rule 12.1, 12.2 and 12.3". Cambria Reply

Declaration [35], ¶61.  As to the remaining requests pursuant to Rules 16(b)(1)(A) and (b)(1)(B),

defendants argue that it has "not made any decision as to whether it will be putting a case on at

trial, as we do not know if the government will meet its burden of proof at trial", but "should the

defense decide that it will likely be presenting evidence in a defense case-in-chief at trial, when

the defense has decided on the use of a particular item to be utilized, it will continue to comply

with all of its obligations under the law" (id., ¶61 n.19).

　　　　　"Rule 16 . . .  imposes reciprocal discovery obligations on defendants."

United States v. Smith,  985 F.Supp.2d 506, 522 (S.D.N.Y. 2013).  Specifically, Rules

16(b)(1)(A) and (b)(1)(B) provide that where the government complies with a defendant's request

for disclosure under Rules 16(a)(1)(E) and (a)(1)(F), a defendant "must permit" the government,

on request, to inspect documents, objects, reports of examinations, and tests in a defendant's

possession that the defendant "intends to use in [its] case-in-chief at trial".  "A defendant would

always like more information about the government's case before revealing anything about his or

her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having

made certain specified disclosures, not on the government's laying open its entire case or the

defendant's satisfaction." United States v. Rajaratnam,  2011 WL 723530, *5 (S.D.N.Y. 2011).

　　　　　Significantly, defendants make no attempt to distinguish or offer contrary authority

to the case law relied upon by the government, including United States v. Ryan, 448 F.Supp. 810

(S.D.N.Y.), aff'd 594 F.2d 853 (2d Cir. 1978), cert. denied, 441 U.S. 994 (1979), which rejected a

similar argument that the defendant was not obligated to provide reciprocal discovery that he

would offer on his direct examination since he was "'not yet in a position to make key trial

strategy decisions, including whether or not the defendant will testify'".   In so holding, the court

recognized that "[i]t is perfectly normal and proper for a defendant to postpone the decision as to

whether or not he will testify until the end of the government's case". Id. at 811.   However,

"[s]ince the defendant has availed himself of the strategy to obtain discovery of the government",

the court concluded that "he must comply with the requirement for reciprocal discovery". Id.[34]

Therefore, the government's motion is granted.  Defendants shall provide their

Rule 16(b)(1)(A) and (b)(1)(B) "discovery, if any, not later than 30 days prior to trial or such other

date as the District Judge may direct".  United States v. Sikut, 488 F.Supp.2d 291, 304  5

(W.D.N.Y. 2007) (Foschio, M.J./Arcara, J.) (emphasis omitted).


## CONCLUSION

For these reasons, defendants' non-dispositive motions [16] are granted in part and

denied in part, and the government's cross-motion for reciprocal discovery (government's

Consolidated Response [28], pp. 62-67) is granted; and I further recommend that defendants'

motions to dismiss, to suppress evidence, and for a Franks hearing [16, 18] be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report,

Recommendation and Order must be filed with the clerk of this court by September 25, 2014

---

[34]   Although not raised by the government, it is not clear that defendants' case-in-chief
would be limited to any case they may present after the government rests. *See*  United States v. Hsia,
2000 WL 195067, *2 (D.D.C. 2000) ("Defendant's cross-examination of government witnesses, and the
evidence introduced during that cross-examination, certainly may be used to support her defense. . . . The
cross-examination of . . .  government witnesses therefore is properly seen as part of defendant's
case-in-chief if it buttresses [defendant's] theory of the case").

(applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for

extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . .

waives any right to further judicial review of [this] decision".  <u>Wesolek v. Canadair Ltd.</u>, 838 F.

2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

     Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale</u>

<u>Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

     The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local

Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of

the proposed findings and recommendations to which objection is made and the basis for each

objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the

objections must include "a written statement either certifying that the objections do not raise new

legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district

judge's refusal to consider the objection.


Dated: September 8, 2014

                       /s/ Jeremiah J. McCarthy    
                       JEREMIAH J. MCCARTHY
                       United States Magistrate Judge